**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Chad E. TAYLOR, Defendant–**
**Appellant.**

**No. 00–10507.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2001

Filed Aug. 7, 2001

Ann H. Voris and Oliver E. Vallejo, Assistant Federal Defenders, Fresno, California, for the defendant-appellant.

Stanley A. Boone, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: HILL,* GRABER, and McKEOWN, Circuit Judges.

HILL, Circuit Judge:

Chad Taylor appeals his conviction for disorderly conduct. For the following reasons, we reverse the judgment of the district court.

## I.

On May 4, 2000, Park Ranger Arthur Gunzel was dispatched to Lost Arrows Cabins at the Yosemite National Park to settle a dispute between some employees. He interviewed three employees, one of whom identified Chad Taylor as a witness to the dispute. Officer Gunzel went to Taylor's cabin and knocked on the door, which was standing slightly open. Receiving no response, he went inside the cabin and saw Taylor lying on his bed with his eyes shut. Moving to the edge of the bed, he leaned down and poked Taylor in the chest and chin.[1] When Taylor opened his eyes, the officer demanded to see some identification. Taylor responded by saying " * * * * you, * * * * Yosemite, I don't have to show you anything," and sat up. Officer Gunzel replied, "Did you say ' * * * * you' to me?" Taylor, still seated, said "Yeah, * * * * you," and pointed his finger at the officer. When Taylor attempted to rise from the bed, Gunzel perceived Taylor's actions as a threat and tackled him, throwing him to the ground. Taylor struggled with Gunzel and cursed at him. Taylor was subdued and arrested for disorderly conduct and being under the influence of alcohol.

The incident occurred totally within Taylor's cabin. The officer and Taylor were the only people in the cabin. Although two other officers were outside, no other civilian was within 100 feet of the cabin.

At the close of the government's case, Taylor moved for a judgment of acquittal. He argued that the government failed to prove the commission of an act in public as required by the disorderly conduct regulation. He also argued that the regulation is unconstitutionally overbroad and was applied unconstitutionally in this case.

The district court upheld the constitutionality of the regulation on its face and as applied. The court then held that the regulation does not require a public act and found Taylor guilty. The district judge noted for the record, however, that if, on appeal, the regulation should be found to require a public act that he specifically found that the conduct in this case was not public and that "if [the behavior]

---

* Hon. James C. Hill, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. Gunzel testified that he was taught in his emergency medical technician training that this is an approved method of trying to awaken someone.

has to be public, then the offense isn't committed."

## II.

The constitutional issues raised in this case need not be addressed if the regulation requires public conduct and it was not present. Therefore, we shall address this issue first.

The disorderly conduct regulation provides that:

> [a] person commits disorderly conduct when, with intent to cause *public alarm, nuisance, jeopardy or violence,* or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts:
>
> .     .     .     .     .
>
> Uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace.

36 C.F.R. § 2.34(a)(2) (emphasis added). The purpose of this regulation is "to conserve scenery, natural and historic objects, and wildlife, and to provide for the enjoyment of those resources in a manner that will leave them unimpaired for the enjoyment of future generations." 36 C.F.R. § 1.1(b).

The government's main argument, with which the district court agreed, is that the word "public" in section 2.34(a) modifies only "alarm," but not "nuisance," "jeopardy," or "violence." In other words, the government's position is that it could secure a conviction by proving either "public alarm" or, alternatively, either "nuisance," "jeopardy," or "violence," even if those acts lacked any public attributes. Taylor, on the other hand, argues that the regulation should be read to criminalize only conduct of a public nature, because the government's reading of the regulation for-

bids private conduct within the context of a regulation designed to protect public enjoyment of the park. The better interpretation of this regulation, he asserts, is that it prohibits conduct that disturbs the public peace by creating alarm, nuisance, jeopardy, or violence. The district court specifically found that Taylor's conduct was not in a public place and did not affect the public. Therefore, if we agree with Taylor that section 2.34 requires a public act, his conviction would be due to be reversed.

## III.

Although we have not previously decided what constitutes disorderly conduct under federal law, a handful of other federal courts have considered the issue. In *United States v. Elmore*, 108 F.3d 23 (3d Cir. 1997), the Third Circuit had to decide whether a harassment conviction could be used to enhance a sentence for drug dealing under a sentencing guideline that excluded from consideration all convictions for offenses "similar" to disorderly conduct. The court reasoned that, since harassment is conduct directed at another person, it is not "similar" to disorderly conduct because the latter signifies conduct that disturbs the "public peace." *Id.* at 26. The court explicitly rejected Elmore's attempt to parse the language of the disorderly conduct statute so that it forbade "public inconvenience," and also "annoyance or alarm," stating, "[w]e think it plain that the word 'public' was intended to modify not only 'inconvenience,' but 'annoyance' and 'alarm' as well." *Id.* at 26 n. 2. The court cited in support of this conclusion the Model Penal Code, section 250.2(1), which provides that a person is guilty of disorderly conduct if the conduct intends to cause "public inconvenience, annoyance or alarm" and then provides a lengthy definition of "public" to include any place to which the public or a substantial group has access. *Id.* at 25–26.[2]

---

**2.** The government argues that the Model Pe-     nal Code's construction of "disorderly con-

The Eastern District of Pennsylvania has also construed the regulation at issue in this case to require conduct which involves the public. *United States v. Malone*, 822 F.Supp. 1187, 1189 (E.D.Pa. 1993). In that case, the court voided a conviction for disorderly conduct because "the evidence does not demonstrate either that Malone intended to cause or knowingly or recklessly risked causing public alarm, nuisance, jeopardy, or violence." *Id.* at 1188. The court reasoned that "it is clear from the regulation that such an act is only disorderly conduct if it is intended to disturb the public or if the defendant's reckless acts create a risk of public disturbance. Here, the public was not involved at all." *Id.*[3]

Finally, in *United States v. Lanen,* 716 F.Supp. 208 (D.Md.1989), the district court in Maryland assumed that the federal disorderly conduct regulation requires conduct in public.

The government relies on *United States v. Hoff,* 22 F.3d 222, 223 (9th Cir.1994), for the proposition that "public" modifies only "alarm" but not "nuisance," "jeopardy," or "violence." *Hoff,* however, does not speak to the issue in the instant case. In *Hoff,* the question was whether, in a regulation that listed certain prohibited acts in the disjunctive, proof of any one of the acts could support a conviction. (Not surprisingly, we held that it could.) In this case, however, there is no real dispute whether the regulation should be read in the disjunctive, i.e., that the government need

only prove alarm *or* nuisance *or* jeopardy *or* violence. Even Taylor does not argue that the regulation should be read in the conjunctive, i.e., that the government must prove alarm *and* nuisance *and* jeopardy *and* violence. The issue here, rather, is whether "public" modifies only "alarm," or also the other three words in the series. *Hoff* simply does not address the issue whether an adjective at the beginning of a series modifies only the first word, or each in the list.

We agree with those courts that hold that the disorderly conduct statute requires a public component to the proscribed behavior. We, too, think it plain that the word "public" was intended to modify not only alarm, but also nuisance, jeopardy, and violence. Congress has already prohibited private nuisance (harassment), private jeopardy (assault), and private violence (battery). We find support for our conclusion in the Model Penal Code, which defines disorderly conduct to be conduct that intends to cause "public inconvenience, annoyance or alarm" and then clearly defines "public" to modify all three categories of conduct. Model Penal Code § 250.2(1) (1962). *See also United States v. Albers,* 226 F.3d 989, 995 (9th Cir.2000) (interpreting "public" as used in section 2.34(a) by reference to section 250.2(1) of the Model Penal Code).

Since the district court has found as a matter of fact that the conduct in this case was not "public" in the sense proscribed by the statute, Taylor's conviction is due to be reversed.[4] Accordingly, the judgment of

---

duct" is not helpful because the terms used there—inconvenience, annoyance or alarm—cannot stand on their own without the adjective "public" to modify them. According to the government, "an individual cannot cause inconvenience, annoyance or alarm *without* affecting the public. However an individual can cause nuisance, jeopardy or violence without effecting [sic] the entire public." We fail to see the logic in this argument.

3. The government distinguishes *Malone* by arguing that there was no evidence there that the defendant uttered language in a threatening and challenging manner as the defendant did in this case. This distinction is totally irrelevant to the issue whether the conduct occurred in a public place.

4. We take care to point out that we do not hold that conduct in a "private" place can never constitute disorderly conduct. In this case, the district court's finding that the con-

the district court is REVERSED and the conviction and sentence are VACATED.

duct did not have a public component is not disputed, so there is no issue raised in this regard. In another case, conduct, although occurring in a private place, might well cause or recklessly risk "public alarm, nuisance, jeopardy or violence."